172 So.2d 804

**BLUE CROSS–BLUE SHIELD OF ALABAMA**

v.

**Verbon G. JACKSON.**

**6 Div. 40.**

Court of Appeals of Alabama.

March 9, 1965.

Lange, Simpson, Robinson & Somerville, Birmingham, for appellant.

Harold P. Knight, Birmingham, for appellee.

CATES, Judge.

■ The facts in this civil case are taken from the appellant's brief without counter statement by appellee. Therefore, under Supreme Court Rule 9, last sentence, they are taken by us as accurate and sufficient.

The cause was originally assigned to JOHNSON, J., and his now dissenting opinion has further factual recitals.

■ The cause was tried below without the intervention of a jury. No transcript of testimony appears in the record before us. The judgment entry recites that the "case was submitted to the court on stipulated facts and taken under advisement." We review without any presumption. Barnwell v. MacMahon, 26 Ala.App. 451, 162 So. 138.

The circuit clerk has certified in a separate envelope three exhibits apparently submitted by the defendant. Strictly, Supreme Court Rule 23 frowns on this mode of transmittal.

Exhibit 1 is a printed certificate issued over the facsimile signature of the President of Blue Cross in its behalf.

Section II of this certificate provides in part as follows: "* * * the Corporation agrees that upon the admission of a member to a * * * hospital after the effective date of his coverage * * *, hospital service shall be available to such member * * * during such time as the member's attending physician may determine that hospitalization is necessary."

Under Section IV it is provided, among other things, that "a member shall be *entitled* to hospital service during the first seventy (70) days of each hospital confinement." (Italics added.)

Under Section VI it is provided: "The subscriber's [appellee] contract shall continue in force from and after its effective date for the term * * * and from term to term thereafter * * * so long as the applicable fees are paid in advance, unless terminated as herein provided."

Under Section VII it is provided, among other things:

"3. OTHER COVERAGE—If the subscriber is a member of a group which has group hospitalization coverage other than that furnished by the Corporation, the contract between the subscriber and the Corporation and all rights hereunder may be terminated at any time on thirty (30) days written notice to the subscriber or to his remitting agent, if any."

I.

The State of the Record is Imperfect

■ However, under the long standing rule of Looney v. Bush, Minor 413, and Bradley v. Andress, 30 Ala. 80, we cannot entertain these original papers, i. e., the group certificate, Exhibit 1, and two notices of cancellation. These documents are necessarily excluded—designatio unius est exclusio alterius—both from what was before the court below and here. Calvert v. Calvert, 265 Ala. 529, 92 So.2d 891.

We quote from Bradley v. Andress, supra:

"* * * The settled rule is, that whenever it is intended to incorporate in a decree or bill of exceptions, or in an agreement designed to operate as a substitute for a bill of exceptions, any writing read or offered in evidence, it is indispensable to set it out therein, or so to describe it 'by its date, amount, parties, or other identifying features, as to leave no room for mistake in the transcribing officer.' * * *"

The record below, hence, manifests error in that the court purported to enter judgment on a contract without proof of its terms.

Because of the likelihood of this reversal not disposing of the controversy, the writer and Price, P. J., set forth the following views.

### II.
#### When did Cancellation Take Effect?

■ Clearly consent of an employee to cancellation of a group policy, unless the policy expressly says so, is not required unless an interest has vested. Metropolitan Life Ins. Co. v. Korneghy, 37 Ala.App. 497, 71 So.2d 292, 68 A.L.R.2d 239, adopted by Hill v. Metropolitan Life Ins. Co., 39 Ala.App. 39, 96 So.2d 184, affirmed 266 Ala. 285, 96 So.2d 185.

■ In approving Carr, P. J., and Harwood, P. J., Mr. Justice Lawson, remarked:

"The observations made in the Shears case [Shears v. All States Life Ins. Co., 242 Ala. 249, 5 So.2d 808], supra, to the effect that cancellation of a group policy cannot be effectuated legally without the employee's consent is applicable only where the employee has an *accrued* cause of action *at the time of cancellation* or where premiums have been paid beyond the date of cancellation or the contract of insurance provides that the consent of the employee must be obtained." (Italics added.)

It is readily apparent that Blue Cross gave notice of cancellation before Mr. Jackson's son had entered the hospital.

This would have been a different case if the notice had been given as provided in the policy after the son was already in the hospital. We do not decide how the policy would have applied to such a hypothetical circumstance.

The editors in Anno. 68 A.L.R.2d 249, § 16[a], p. 276, state:

"* * * if the cancellation or modification of the master group policy was validly effected before liability under the policy attached, the employee or his beneficiary is precluded from recovery unless a statute or the policy otherwise provide. * * *"

Pennsylvania Cas. Co. v. Perdue, 164 Ala. 508, 51 So. 352, concerned an individual policy which the company sought to cancel after the insured became ill. The notice followed the happening of the risk.

In Benefit Ass'n. Ry. Employees v. Bray, 226 Ala. 444, 147 So. 640, the ratio decidendi revolves around a judgment sustaining demurrer to appellant-defendant's plea No. 8. This plea sought to recoup to the extent of premiums which had not been paid.

The Bray opinion refers to the principles recognized in Equitable Life Assur. Soc. v. Roberts, 226 Ala. 8, 145 So. 157, and Prudential Ins. Co. v. Gray, 230 Ala. 1, 159 So. 265. These cases rest on extension of policy periods (to avoid forfeiture from nonpayment of otherwise due premiums) by crediting the insured with accrued (i. e., liquidated or ascertainable) sums owed him at the time payment is due.

■ A relatively early (1934) Kentucky opinion, Aetna Life Ins. Co. v. Gullett, 253 Ky. 544, 69 S.W.2d 1068, says in part:

"The group policy is a contract between the Aetna Life Insurance Company and the North East Coal Company for the benefit of its employees. No doubt exists of Gullett's right to sue thereon, but the rule in such case is: 'One who sues on a contract made for

his benefit must accept the contract as it was made.' [Citing cases.] Therefore, Gullett's right to recover on the policy, and certificates issued thereunder, was subject to the provisions of the policy conferring the right of the insurance company to cancel the policy as therein provided. To defeat his right of recovery by a cancellation, it must be made before the liability to him attached. [citing authorities] * * *"

However, shortly thereafter, in Aetna Life Ins. Co. v. Staggs, 255 Ky. 638, 75 S.W.2d 214, the Court of Appeals had to explain, if not alter, Gullett's case, particularly as to when, under the policy wording, liability attached.

In brief, Blue Cross states:

" * * * The company did not terminate because of any wish to avoid payments, but because the group to which the appellee belonged changed coverage and acquired coverage from another company. The appellee had paid premiums through his group up to and including the 10th of February and he received notice on the 10th of January that his coverage would cease on February 10th. The appellant had therefore notified him of the termination of coverage before the hospitalization of the son began.

* * * * * *

"We suggest rather that the plaintiff is attempting to profit by this situation and obtain the benefits of two contracts. * * *"

Thus it seems clear to us that this is a case of a group insurer not wanting to participate in a double coverage situation.

We, of course, cannot indulge in surmise to the extent of saying that Goslin-Birmingham Manufacturing Company obtained another policy which took over where Blue Cross left off. Yet it must be deemed to have considered the effect of Blue Cross's exercising its contract right before it signed up with another underwriter.

■ We therefore consider that, under the double coverage option, the cancellation, as to a hospital confinement beginning after notice, took effect on the stated termination date of the policy period.

The judgment below is reversed and the cause is remanded.

Reversed and remanded.

JOHNSON, Judge (dissenting).

The appellee, Verbon G. Jackson, brought this suit against the appellant, Blue Cross-Blue Shield of Alabama, on a hospital insurance policy issued by the appellant. The facts were presented to the trial court by written stipulation in addition to the insurance contract and letters of cancellation offered by the parties. The court below entered judgment for the appellee in the amount of $86.90. The stipulation of facts states as follows:

"Plaintiff, employed by Goslin-Birmingham Manufacturing Company, and as an employee of said company had Blue Cross-Blue Shield insurance under a group policy. In 1962 Goslin-Birmingham Manufacturing Company took out insurance with another company and under the provisions of the policy, Blue Cross cancelled its group policy. On January 9, 1963, Blue Cross-Blue Shield mailed an official notification to Mr. Jackson, informing him that his coverage would terminate as of February 10, 1963. On January 7th a similar notification was directed to Goslin-Birmingham Manufacturing Company. On January 29th similar notifications were directed both to Mr. Jackson and to Goslin-Birmingham Manufacturing Company. Mr. Jackson received the first notification on January 10, 1963 and the second on January 30th, both of these notifications informed him his coverage would be terminated on February 10th.

"Mr. Jackson's son, Tommy, entered University Hospital on February 5th and was discharged February 13th. Blue Cross-Blue Shield paid for hospital charged for the 5th through the 10th, the date which the said cancellation became effective. The question presented here is whether Blue Cross-Blue Shield is also responsible for the last three days that plaintiff's son was in the hospital."

The pertinent part of the insurance contract, and that part upon which the appellant relied in its letters of cancellation, is Section VII, Paragraph 3, which states:

"OTHER COVERAGE—If the subscriber is a member of a group which has group hospitalization coverage other than furnished by the Corporation, the contract between the subscriber and the Corporation and all rights hereunder may be terminated at any time on thirty (30) days written notice to the subscriber or to his remitting agent, if any."

It appears that the notice of cancellation was sufficient, and that it was received by the appellee (subscriber) and by his remitting agent, Goslin-Birmingham Manufacturing Company. Since all members of the appellee's immediate family were covered by the contract, the appellee's son, Tommy, was entitled to hospital services so long as the contract remained in force.

The question presented on this appeal is the same as that presented in the court below—namely, when a group hospital policy provides that the policy and all rights thereunder may be terminated by the insurer at any time on thirty days notice if the insured is a member of a group which has group hospitalization coverage other than that furnished by the insurer, is the insurer liable for hospitalization occurring thirty days after notice of termination, where such hospitalization commences before the expiration of the thirty day period but after the notice of cancellation.

Inasmuch as the notification received by the appellee on January 10th stipulated that his contract would be terminated on February 10th, cancellation of the policy could not have become effective before February 10th.

Our Supreme Court has held, in effect, that cancellation of a group policy cannot be effectuated legally without an employee's consent where the employee has an accrued cause of action at the time of cancellation. See Hill v. Metropolitan Life Ins. Co., 266 Ala. 285, 96 So.2d 185.

In Pennsylvania Casualty Co. v. Perdue, 164 Ala. 508, 51 So. 352, an insured sought to recover indemnity under a policy of health insurance for a sickness which lasted for a period of 26 weeks, and which allegedly began on July 5, 1905. The defendant insurance company filed a plea to the complaint which set out a provision of the policy that " 'The company may cancel this policy by mailing notice of cancellation to the assured's address given in the schedule, with its check for the unearned part, if any, of the premium,' " and with an allegation of a cancellation of July 8, 1905. The court in holding this plea had stated:

"For one thing, it fails to deny in any form liability for the period from July 5th to July 8th, and so fails to answer the complaint in its entirety, as it professes to do; for another the interpretation of the contract put forward by this plea is not to be accepted, because, not rendered necessary by the letter, it entirely destroys the spirit of the contract. * * *"

In Benefit Ass'n Ry. Employees v. Bray, 226 Ala. 444, 147 So. 640, we find:

"It is also said to be contrary to the spirit of the contract of health insurance so as to interpret a clause in the policy which permits its cancellation without cause as to authorize it to be done under such a provision during the sickness covered by it."

The spirit or purpose of a hospitalization policy, as well as a sickness or accident policy, is protection against sickness or disability which commences while the policy is in force, and, therefore, I am of the opinion that the spirit or purpose of the contract would be destroyed by holding that the insurer could legally effect a unilateral cancellation of the contract when a sickness or disability has commenced while the contract is still in force and which sickness or disability continues after the effective date of such cancellation, unless the contract contains an express provision to the contrary.

Thus, I would hold that where a provision in a hospital insurance policy permits the insurer to cancel the policy on a certain number of days notice, and the insurer gives notice of such cancellation, cancellation of the policy is not legally effectuated if at the effective date of cancellation liabilities have arisen before the effective date which would continue after that date.